THE RICHARD S. GARRETT.[1]

McCALDIN et al. v. THE RICHARD S. GARRETT.

(District Court, S. D. New York. April 1, 1893.)

SALVAGE—POSSIBILITY OF DAMAGE—PROBABLE LOSS TO BE CONSIDERED.
  Where a tug in New York harbor was, in consequence of a collision, abandoned by her crew, and left with her engines still backing, and was immediately boarded by another tug, her steam shut off, and herself taken to a place of safety, the service lasting some three hours, and no other vessel being immediately at hand to render it, and the evidence left it doubtful whether, if assistance had not been so rendered, she would have sunk, at a damage of $1,500 to $2,000, or backed ashore at half that damage,

the court, while inclining to think that she would not have sunk, yet did not wholly exclude that contingency in fixing the award, and held that $350 should be allowed the salving tug, $50 to her master, who shut off the steam of the disabled vessel, and $75 to another tug, which rendered assistance in pumping.

In Admiralty. Libel by James McCaldin and others against the steam tug Richard S. Garrett to recover salvage. Decree for libelants.

Carpenter & Mosher, for libelants.
Stewart & Macklin, for claimants.

BROWN, District Judge. This libel was filed to recover salvage compensation for services in picking up the Garrett within a few minutes after she had been abandoned by her crew in a supposed sinking condition, following a collision about 1 P. M. on the 29th of April, 1892, in front of the South Ferry slip, from 200 to 300 feet off the shore.

Owing to a burst in the steam pipe caused by the collision, the engineer had left her immediately with her engines still backing. The McCaldin came up alongside a few minutes afterwards, and after two or three attempts succeeded in making fast; and then her captain, at some personal risk, succeeded in shutting off her steam from the engines. She was then taken to the shoal water a little below Ft. William by Governor's island, and after being pumped out with the aid of the Garfield, another tug belonging to the libelants, she was towed to Jersey City. The whole service was about three hours.

The amount to be allowed for a salvage service must be in proportion, among other things, to the *probable loss*, in case the service had not been rendered. That question, aside from the wide differences in the estimated value of the Garrett, presents some doubt in the present case. From the evidence it appears that the Garrett would undoubtedly, if she had not been aided by the McCaldin, have either sunk, or backed upon the rocks at Governor's island. If she had sunk, the damages would probably have been at least from $1,500 to $2,000. Had she not sunk, but only run upon the rocks, the damages would probably have been not half so much. There does not appear to have been any other tug except the libelants' boats that could have rendered her efficient service in time to prevent one or the other of those damages. When she was abandoned it was supposed she would sink at once; and although upon the whole evidence I am inclined to think the probabilities are that she would not have sunk, yet as this is not certain, that contingency should not be wholly excluded in fixing a compensation.

A fair award in the present case will be, I think, (1) $50 to Capt. Barker of the McCaldin for his personal exposure; (2) $350 to the McCaldin; (3) $75 to the Garfield. Of the two latter items two thirds will go to the owners, and the remaining one third to be divided among the master, officers and crew of each boat respectively, according to their wages. Decree accordingly, with costs.